**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KHALFINI RICHARDSON,

                Petitioner,

                v.

UNITED STATES OF AMERICA,

                Respondent.

Civil Action No. 20-10045 (MAS)

**OPINION**

**SHIPP, District Judge**

       This matter comes before the Court on Petitioner Khalfini Richardson's motion to vacate sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1.) The Government filed a response to the motion (ECF No. 5), to which Petitioner replied. (ECF No. 11.) Also before the Court is Petitioner's supplemental motion to vacate sentence (ECF No. 18), to which the Government also responded. (ECF No. 22.) Petitioner did not file a reply. For the following reasons, the Court denies Petitioner's non-appeal related claims, denies Petitioner a certificate of appealability as to the non-appeal related claims, grants a hearing as to Petitioner's appeal related ineffective assistance of counsel claim and as to the timeliness of that claim, and grants the Government's request for a finding of waiver of privilege and for permission to interview Petitioner's prior counsel.

### I.      BACKGROUND

       Following a series of controlled purchases of cocaine and cocaine base from Petitioner and several compatriots, as well as a search which recovered a substantial quantity of drugs, Petitioner

was arrested in January 2016. (*See* PSR ¶¶ 28-33.) Following the return of a superseding indictment, Petitioner entered into a plea deal with the Government on October 13, 2017. (*See* Docket No. 17-32 at ECF No. 90.) In that agreement, Petitioner agreed to plead guilty to a single count of conspiring to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846 in exchange for the dropping of the remaining charges against him and the agreement of the Government to seek no further charges arising out of the drug conspiracy that led to Petitioner's arrest. (*Id.* at 1.) In signing the plea agreement, Petitioner directly acknowledged that this conviction would carry a mandatory minimum sentence of five years and a maximum sentence of forty years, accompanied by fines, fees, and a period of supervised release. (*Id.* at 2.) The agreement also informed Petitioner that his ultimate sentence would be "within the sole discretion of the sentencing judge." (*Id.*) As part of that agreement, Petitioner stipulated to various guidelines factors, including the amount of drugs involved in his offense, credit for acceptance of responsibility, and the expected guidelines range which would apply if the Court agreed with the stipulations. (*Id.* at 7-8.) The stipulations left open, however, the question of whether Petitioner qualified as a career offender under the guidelines, and permitted both parties to present arguments on that issue at sentencing. (*Id.*) The agreement also contained a waiver of Petitioner's appellate and collateral attack rights which, if Petitioner were sentenced below the sentencing range applicable to a guidelines range of thirty one, would bar any appeal other than an appeal which challenged the Court's "determination of the criminal history category." (*Id.* at 8.)

In appearing before this Court in order to plead guilty, Petitioner also prepared and signed an application for permission to enter a guilty plea. (Docket No. 17-32 at ECF No. 89.) In that application, Petitioner certified that he had been informed of the forty year potential maximum sentence, that he had not been promised a lighter sentence by anyone, and that he understood that

his sentence was in the sole discretion of the sentencing judge who, following a consideration of the advisory sentencing guidelines, could impose a term up to the forty year maximum. (*Id.*) Petitioner's application also contained an acknowledgement that Petitioner was aware of and understood his appellate waiver. (*Id.*)

Petitioner appeared for a plea hearing on October 13, 2017. (ECF No. 5-1.) At that hearing, after confirming his age, education, ability to understand proceedings, and the absence of alcohol or drugs in his system, Petitioner confirmed that he had read and discussed the plea agreement with counsel to his satisfaction, that he understood the agreement, and that he wished to plead guilty because he was guilty of the charged offense. (*Id.* at 2-5.) Petitioner then affirmed that he understood the rights he was waiving by pleading guilty and that he understood that his guilty plea carried a mandatory minimum sentence of five years and maximum of forty years. (*Id.* at 5-9.) Petitioner also confirmed that no one had made him any promises or assurances as to his sentence to persuade him to plead guilty. (*Id.* at 9-10.) Petitioner was also informed of the advisory nature of the guidelines and this Court's sentencing discretion. (*Id.* at 10-11.) Petitioner confirmed his understanding of the appellate waiver contained in his agreement, agreed that he signed the application to plead guilty, and stated that he understood the agreement and wished to plead guilty. (*Id.* at 11-12.) Following a factual recitation of his underlying crime, Petitioner entered his guilty plea, which this Court accepted. (*Id.* at 12-16.)

On February 21, 2018, Petitioner appeared for sentencing. (*See* ECF No. 17-32 at ECF No. 125.) After argument, this Court found that Petitioner's criminal history qualified for the career offender enhancement, applied that enhancement, and found that Petitioner was subject to a level 31 guidelines range, which warranted a sentence between 188 and 235 months. (*Id.* at 13-14.) After a consideration of the advisory guidelines and the circumstances of Petitioner and

his offense history, this Court departed downward and ultimately sentenced Petitioner to a term of 156 months. (*Id.* at 30-31.)

Petitioner did not file a direct appeal. Instead, on August 5, 2020, this Court received from Petitioner his initial motion to vacate sentence. (ECF No. 1.) In his motion, Petitioner avers that he placed his motion into the prison mail system on February 13, 2019, with postage attached. (ECF No. 1 at 8.) The postmark date on the envelope this Court received is illegible (*see* ECF No. 1-1), and Petitioner has presented no explanation for why his motion was not delivered to the Court for eighteen months after he claims to have placed it into the prison mailing system. Petitioner maintains, however, that he mailed his motion on February 13, 2019. (*See* ECF No. 11-1 at 2.) Petitioner has provided no documentary or other evidence other than his own sworn statements in support of that contention. Finally, Petitioner filed supplemental correspondence in the fall of 2021, which he chose to have construed as a supplement to his motion to vacate sentence. (*See* ECF No. 18-20.)

## II.   **LEGAL STANDARD**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an

omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

III.   **DISCUSSION**

A.   **An evidentiary hearing is necessary only as to the appellate ineffective assistance claim.**

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. As all of Petitioner's claims, other than his claim that his counsel failed to file an appeal after being directly told to do so, are either patently without merit, time barred, or not cognizable under § 2255 as detailed below, no hearing is required to resolve Petitioner's non-appeal related claims. As a hearing is necessary to resolve the appeal related ineffective assistance claim and to determine whether that claim is timely, this Court will order a hearing as to those two issues for the reasons presented below.

B.   **Petitioner's recusal request**

In his supplement, Petitioner contends that this Court is biased against him and that this Court should recuse from hearing his claims. The basis for this assertion is not entirely clear, but

appears to arise from Petitioner's belief that this Court providing him the opportunity to choose whether to have his letters treated as a supplement to his § 2255 motion somehow amounted to a constraining of Petitioner's rights. (*See* ECF No. 18-2.) Generally, a judge need recuse himself from a matter only where his impartiality may reasonably be questioned, an issue which will usually arise only where the judge has expressed opinions or beliefs regarding a petitioner's case based on extrajudicial factors or where the judge has displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167-68 (3d Cir. 2004). Petitioner has made no such showing. The only issue Petitioner raises is the Court's order permitting him to choose how his supplemental correspondence should be characterized – an action that was hardly discretionary and was indeed required of this Court by *Castro v. United States*, 540 U.S. 375 (2003). That action is in no way indicative of bias or animus against Petitioner, and provides no basis for recusal. Petitioner's request that this Court recuse from this matter is therefore denied.

### C.    Timeliness

The Government contends that all of Petitioner's claims in this matter are time barred. Motions to vacate brought pursuant to 28 U.S.C. § 2255 are subject to a one year statute of limitations which generally runs from the date on which the petitioner's conviction becomes final. 28 U.S.C. § 2255(f). Where a petitioner fails to file a direct appeal, the petitioner's conviction becomes final on "the date on which the time for filing . . . an appeal expired," or fourteen days after the entry of the judgment of conviction. *Kapral v. United States*, 166 F. 3d 565, 577 (3d Cir. 1999); *see also United States v. Johnson*, 590 F. App'x 176, 177 (3d Cir. 2014); Fed. R. App. P. 4(b)(1)(A)(i). Petitioner's judgment of conviction was entered in this matter on February 21, 2018. (Docket No. 17-32 at ECF Nos. 112, 114.) Petitioner's conviction thus became final fourteen days later, on or about March 7, 2018. Petitioner's one year statute of limitations thus expired on March

7, 2019.  Any claim raised by Petitioner after that date would, absent some basis for tolling, be time barred.  *See, e.g.*, *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (holding that federal habeas limitations statutes are applied on a claim-by-claim basis, and the timeliness of a single claim will not render other, later raised claims timely).

Here, the Government contends that Petitioner's initial habeas petition was not filed until August 2020, well over a year after the one-year limitations period expired.  In response, Petitioner contends that he is entitled to the benefit of the prisoner mailbox rule, under which his motion to vacate sentence would be considered filed as of the date it was handed over to prison officials for mailing.  *See generally*, *Houston v. Lack*, 487 U.S. 266 (1988).  The prison mailbox rule first arose in the context of the filing of notices of appeal, but has since been extended to habeas filings.  In the appellate context, the burden is generally on the prisoner to show that he is entitled to the benefit of the rule, which will normally require that he submit a certification stating the date on which it was handed over to prison officials and that postage was prepaid prior to this submission.  *See, e.g., Council v. Nash*, 400 F. App'x 680, 682 (3d Cir. 2010).

Although a number of circuit courts have considered what is required to either establish or remove the protections of the rule in the habeas context, the Third Circuit has yet to fully outline how challenges to the benefit of the rule are to be handled in proceedings such as this.  Most circuit courts to have considered the issue will at least require a petitioner to meet the requirements applicable in the appellate context—a certification of prepaid postage and the date on which the document was handed over—in order to be entitled to the rule's protections, after which the Government will be required to rebut the presumption that the petitioner filed his document on the certified date.  *See, e.g., Ray v. Clements*, 700 F.3d 993, 1008-11 (7th Cir. 2012); *Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001); *see also Bullock v. United States*, 655 F. App'x 739, 741 n.2 (11th Cir. 2016).  Some circuits have placed a higher burden on the petitioner before

rebuttal will be required – such as a showing of diligence sufficient to support applying the equitable mailbox rule, *see Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001), or a requirement that the petitioner's initial certification set forth the "who, what, when, where, how, and why of his alleged delivery to a prison official" in addition to "some other corroborating evidence," to warrant the rule's protections. *See Ray*, 700 F.3d at 1011-12.

If the rules applied in the appellate context applied here, Petitioner would have made the applicable showing needed to *prima facie* invoke the rule. Petitioner has certified that his initial motion was handed over for mailing in February 2019 and had postage upon it at that time. If, instead, the rule invoked in the Seventh Circuit were to apply, Petitioner has utterly failed to provide any factual details regarding his handing over of his motion to vacate sentence, and Petitioner would not be entitled to the rules' protections. In the absence of specific guidance from the Court of Appeals about how to apply the rule in this context, this Court is inclined to apply the basic rule that the Third Circuit applies in the appellate context, under which Petitioner has made his initial showing warranting the rule's presumption. *See Council*, 400 F. App'x at 682. Petitioner asserts that he handed over his initial motion to vacate sentence prior to March 7, 2019. If the presumption is not rebutted, the two claims raised in his initial motion to vacate sentence would be timely filed.

The Government argues that Petitioner's certification is incredible on its face. Specifically, Petitioner submits that he handed his motion to vacate over in February 2019, but it mysteriously did not arrive to the Court until August 5, 2020. In the Government's view, absent additional facts such as the motion initially being returned or otherwise lost, there is no plausible explanation available for this massive delay between Petitioner handing over the motion and receipt of the motion by this Court. Petitioner, for his part, has made no attempt to explain the considerable delay between his alleged mailing of the motion and its receipt by this Court. Petitioner instead

stands by his certification, the only evidence he has provided.  In light of the considerable delay between the alleged mailing and the Court's receipt, and the lack of any plausible explanation for this delay, this Court finds that the delay amounts to sufficient evidence to call the credibility of Petitioner's certification into question.  As the Court cannot fully judge Petitioner's credibility in the absence of live testimony, and as the Court in any event concludes that a hearing will be necessary to resolve Petitioner's appeal related ineffective assistance of counsel claim for the reasons expressed below to the extent that it is not time barred, the Court will order a hearing on those two issues.  As Petitioner's ineffective assistance of plea counsel claim is without merit for the reasons expressed below, that claim will be denied on the merits at this time.

Turning to Petitioner's supplemental § 2255 motion, Petitioner raises two claims – one related to the calculation of various sentencing credits, and one in which he seeks to challenge his career offender status in light of new Third Circuit caselaw.  The Government contends that these claims, raised for the first time in correspondence addressed to the Court in the late fall of 2021, are clearly time barred to the extent they are proper bases for relief under § 2255.  As Petitioner has provided no basis for finding these claims timely, and as they were raised more than two years after Petitioner's one year limitations period expired, the Court agrees.[1]

---

[1] As noted above, the habeas time bar is calculated separately for each claim, and a new claim will only receive the benefit of the filing of an earlier claim where it "relates back" to that earlier claim. *See Mayle v. Felix*, 545 U.S. 644, 656-57 (2005).  A claim will only relate back where it arises from the same core of operative facts as a previously raised claim. *Id.*  Here, Petitioner's original two claims challenged counsel's advice as to the plea arrangement which Petitioner contends was premised on a promised ten year sentence, and counsel's alleged failure to file an appeal upon request.  Neither of those claims relate to the Third Circuit's ruling in *Nasir*, which counsel could not have foreseen at the time in light of then binding caselaw.  In any event, Petitioner's new claims are not premised on the failure to file a notice of appeal on request or pre-plea promises, and thus would not relate back to Petitioner's original motion to vacate sentence.  Those claims are thus untimely under § 2255(f).

Even putting aside the time bar issue, however, Petitioner's supplemental claims face an additional insurmountable hurdle – they are not proper claims for relief under § 2255.  Indeed, the Third Circuit has explicitly held that a collateral challenge to a career offender guidelines designation made under the advisory guidelines which was proper when decided but which would no longer be proper under current caselaw is not cognizable under § 2255.  *See United States v. Folk*, 954 F.3d 597, 604 (3d Cir. 2020).  Petitioner's challenge to his career offender designation in his supplemental filing is thus not cognizable under § 2255 and provides no basis for relief even if it had been timely filed.  *Id.*

Petitioner's remaining supplemental claim is similarly defective.  In that claim, Petitioner contends that he should receive additional jail credits towards his sentence for time spent on bail while wearing a monitoring device.  (*See* ECF No. 18-1.)  A claim challenging the computation of jail credits, however, is not cognizable under § 2255, and must instead be brought in a petition pursuant to 28 U.S.C. § 2241, filed in the district of current confinement, after exhausting administrative remedies as to the credits issue.  *See Petlock v. United States*, No. 22-344, 2022 WL 577966, at *3 (D.N.J. Feb. 25, 2022); *see also D'Amario v. Warden Fairton FCI*, 586 F. App'x 828, 830 (3d Cir. 2014).  As Petitioner does not appear to have exhausted his claim before the Bureau of Prisons, (*see* Docket No. 17-32 at ECF No. 130), this Court cannot hear this claim under § 2255.  Petitioner's credit claim is thus not cognizable under § 2255 and is dismissed as such.[2]  As neither of Petitioner's supplemental challenges is cognizable before this Court, Petitioner's supplemental motion to vacate sentence is dismissed.

---

[2] The Court's dismissal of this claim is without prejudice to Petitioner filing a § 2241 petition after he exhausts this claim through the appropriate administrative channels.

**D.     Petitioner's ineffective assistance claims**

In his original motion to vacate sentence, Petitioner raised two claims: first, that his plea counsel improperly advised him as to his plea deal by telling Petitioner that he would receive a ten-year sentence; and second, that counsel failed to file an appeal on his behalf when he so requested.   The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).   To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable."  *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'"  *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances.  *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel.   *Id.*   In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense.  *Id.* at 692-93.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.  Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief.  *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81.

Turning first to the plea claim, the Court notes that the right to effective assistance of counsel does extend to the guilty plea context.  In that context, counsel is required to provide a criminal defendant with sufficient information to "make a reasonably informed decision whether to accept a plea offer," which generally requires that counsel discuss with him the facts of his case, the likelihood of conviction at trial, and his comparative sentencing exposure under a proposed plea in relation to a sentence following a conviction at trial.  *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)); *see also Lafler*, 566 U.S. at 163; *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  An "erroneous sentencing prediciton by counsel[, however,] is not ineffective assistance of counsel where . . . an adequate plea hearing is conducted." *Bui*, 795 F.3d at 367 (quoting *Shedrick*, 493 F.3d at 299).  Even if a petitioner can show that plea counsel was deficient, he must still show prejudice by providing facts which indicate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.  Where a petitioner accepted a guilty plea in the underlying case,

this will require that the petitioner show that, but for counsel's error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Lee v. United States*, 582 U.S. 357, 364-65 (2017). Prejudice may not be premised solely on a petitioner's changed mind. To show prejudice, a petitioner must show that a decision to reject the offered plea would have been rational under the circumstnces. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Here, Petitioner asserts, contrary to the statements made in his plea agreement, application to plead guilty, and plea hearing, that his counsel assured him he would only receive a ten-year sentence, and that he would not have pled guilty absent that assurance. Initially, the Court notes that a defendant's "[s]olemn declarations in open court carry a strong presumption of verity," and the "subsequent presentation of conclusory allegations . . . [or] contentions that in the face of the record are wholly incredible" are insufficient to refute that presumption. *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977). As Petitioner directly told this Court in his plea hearing that no such promise was made to him to induce his plea, his contrary assertions and those of a family member he has provided face a high hurdle.

The Court need not decide if Petitioner has cleared that hurdle, however, because any such promise provided by counsel was clearly overcome by the information provided to Petitioner in his plea agreement, application to plead guilty, and plea hearing. Both the plea agreement and application to plead guilty contain explicit statements informing Petitioner that he faced up to forty years' imprisonment, and that his ultimate sentence would be in this Court's sole discretion subject to a review of the advisory guidelines. This Court also explicitly discussed the issue with Petitioner during his plea colloquy. The Court made certain Petitioner was aware that he faced up to forty years' imprisonment, that this Court alone would decide his ultimate sentence after consulting the advisory guidelines and ensured that Petitioner's decision to plead guilty was not influenced by

13

any erroneous sentencing prediction or promise.   It is thus abundantly clear that any misunderstanding provided by counsel was more than dispelled by this Court's thorough plea colloquy, and Petitioner's plea-related ineffective assistance claim is thus utterly without merit, and is denied as such. *Bui*, 795 F.3d at 367.

In his final claim, Petitioner asserts that he asked his counsel to file an appeal on his behalf after sentencing, and counsel failed to do so.   In order to show that counsel was ineffective in failing to file an appeal, a petitioner must show either that counsel was ineffective in failing to confer with him regarding an appeal or that he expressly indicated his desire to appeal and that counsel refused or failed to file an appeal on his behalf. *See, e.g., Garza v. Idaho*, 139 S. Ct. 738, 746 (2019).   A petitioner will therefore establish an entitlement to relief where the petitioner can show "that, but for counsel's deficient failure to consult with him about an appeal [or to file an appeal after being directed to do so, the petitioner] would have timely appealed." *Id.* at 747 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)).   Where such a showing is made, a court must presume prejudice in the form of the lost appeal, even where there is an otherwise applicable plea waiver which would apply and prevent a direct appeal from proceeding on the merits. *Garza*, 139 S. Ct. at 747.   A petitioner need not show that the appellate claims he wishes to raise would not have been barred by his appellate waiver, nor must he show that his desired claims are of any merit.   The Supreme Court has clearly held that the loss of desired appellate proceedings is prejudice enough to warrant relief in the form of a *nunc pro tunc* appeal. *Id.*; *see also Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001) (proper relief for a lost appeal ineffective assistance of counsel claim is to provide the petitioner with "the opportunity *nun pro tunc* to brief his direct appeal in full").

As Petitioner contends that he told counsel to file an appeal and counsel did not do so, he has stated a *prima facie* claim for relief under *Garza*, notwithstanding his appellate waiver or the

lack of merit of his potential appellate claims.  Thus, if this Court were to find Petitioner credible, he would be entitled to a *nunc pro tunc* appeal.  The Court must therefore hold a hearing to decide Petitioner's appeal related claim.[3]  As a hearing will be held on this issue, the Court is required by Rule 8(c) of the Rules Governing § 2255 Proceedings to appoint counsel for Petitioner if he "qualifies to have counsel appointed under 18 U.S.C. § 3006A."  To qualify for the appointment of counsel for such purposes in light of this Court's finding that Petitioner's appeal claim is sufficient to warrant an evidentiary hearing, Petitioner must show that he is indigent.  *Reese v. Fulcomer*, 946 F.2d 247, 263-64 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).  Thus, to the extent Petitioner wishes to have counsel appointed to represent him at the hearing, he should provide the Court with proof of his indigence within thirty days.

Finally, to the extent a hearing is ordered in this matter, the Government requests an order finding that Petitioner has waived the attorney-client privilege as to his ineffective assistance claims and requiring that counsel make herself available to the Government prior to any hearing if counsel's testimony is required at the hearing.

The Third Circuit has held that a party implicitly waives the attorney-client privilege when the party places the legal representation it received directly at issue.  *See Emmanouil v. Roggio*, 499 F. App'x 195, 201 (3d Cir. 2012); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999); *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996); *Rhone-*

---

[3] It may well be the case, as the Government maintains in its answer in this matter, that Petitioner's success on this claim and any subsequent appeal may ultimately be to his detriment as it may subject him to further charges or a harsher sentence to the extent that Petitioner ultimately breaches the terms of his plea agreement in pursuing an appeal.  That assertion on the Government's part, however, is immaterial to the showing required of Petitioner under *Garza* and thus is irrelevant to the presumption of prejudice that *Garza* requires this Court to apply should Petitioner convince the Court that he explicitly requested that an appeal be filed and that counsel ignored his request. The Court is thus required to hold a hearing notwithstanding the Government's belief that Petitioner's potential success on this claim could have unintended negative consequences for him.

*Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *see also Ragbir v. United States*, No. 17-1256, 2018 WL 1871460, at *2-3 (D.N.J. Apr. 19, 2018). Where a habeas petitioner "claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications." *Ragbir*, 2018 WL 1871460, at *2 (quoting *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009)). This waiver, however, is not unlimited in scope – the petitioner claiming ineffective assistance impliedly waives attorney-client privilege only "with respect to communications with his attorney necessary to prove or disprove his claim[s]." *Pinson*, 584 F.3d at 978; *see also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (courts "must impose a waiver no broader than needed to ensure fairness of the proceedings before it"); *Ragbir*, 2018 WL 1871460, at *2 (implied waiver limited "to attorney-client communications that are necessary for the resolution of the claims at hand"). As Petitioner has placed his counsel's actions and discussions as to an appeal directly in issue, the Court finds that he has waived his attorney-client privilege as to any communications with counsel necessary to prove or disprove his claim[s]". *Pinson*, 584 F.3d at 978. The Government's request for a finding of waiver of privilege and for permission to interview Petitioner's prior counsel shall therefore be granted.[4]

---

[4] Although this Court will grant the Government's request for a finding of waiver of privilege and for permission to interview Petitioner's prior attorney, because "a witness may of his own free will refuse to be interviewed by either the [Government] or [Petitioner]," this Court will not compel Petitioner's prior counsel to speak with the Government. *See United States v. Bryant*, 655 F.3d 232, 239 (3d Cir. 2011). Petitioner's former attorney is free to speak with the Government prior to the hearing in this matter if prior counsel so chooses as Petitioner has waived attorney-client privilege as discussed above. In the event that counsel for whatever reason may refuse to speak with the Government, the Government is free to request an order compelling counsel's attendance at the hearing in this matter.

### E.    Certificate Of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's non-appeal related claims are time barred, not cognizable under § 2255 or meritless for the reasons expressed throughout this Opinion, Petitioner has failed to make a substantial showing of a denial of a constitutional right as to those claims. This Court therefore denies Petitioner a certificate of appealability as to Petitioner's non-appeal related claims.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner's non-appeal related claims are **DENIED**, Petitioner is **DENIED** a certificate of appealability as to his non-appeal related claims, Petitioner is **GRANTED** a hearing as to his appeal related ineffective assistance claim and as to the timeliness of that claim, and the Government's request for a finding of waiver and for permission to interview Petitioner's prior counsel is **GRANTED**. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**